UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 2:22-cr-00013-JAW |
| | ) | |
| FAYSAL KALAYAF MANAHE, | ) | |
| YASER AALI, | ) | |
| AMMAR ALKINANI, and | ) | |
| QUASIM SAESAH | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON MOTION FOR A BILL OF PARTICULARS**

Applying First Circuit law, the Court concludes that the indictment in this Sherman Act criminal case is sufficient to inform the defendants of the elements and nature of the charged crime and to prevent the possibility of double jeopardy. The Court therefore denies the joined motion for a bill of particulars.

**I.   BACKGROUND**

   **A.   Procedural History**

On January 27, 2022, a federal grand jury issued a nine-page indictment, charging Faysal Kalayaf Manahe, Yaser Aali, Ammar Alkinani, and Quasim Saesah and their respective home health care agencies with engaging in a conspiracy to violate the Sherman Act, 15 U.S.C. § 1, by suppressing and eliminating competition for the services of Personal Support Specialist (PSS) workers by agreeing to fix the rates paid to PSS workers and by agreeing not to hire each other's workers. *Indictment* ¶ 1-18 (ECF No. 1).

On May 31, 2022, Mr. Alkinani filed a motion for a bill of particulars. *Mot. for a Bill of Particulars* (ECF No. 65) (*Def.'s Mot.*). The three other named defendants each joined Mr. Alkinani's motion.¹ *Def. Faysal Kalayaf Manahe's Mot. for Leave to File Joinder in Mots. Filed by Co-Defs.* (ECF No. 77); *Def. Quasim Saesah's Notice of Joining in Mots. Filed by Co-Defs.* (ECF No. 81); *Def. Yaser Aali's Notice of Joining in Mots. Filed by Co-Defs.* (ECF No. 82). On June 21, 2022, the Government responded in opposition. *United States' Opp'n to Defs.' Mot. for Bill of Particulars* (ECF No. 90) (*Gov't's Opp'n*). On July 5, 2022, Mr. Alkinani replied. *Def.'s Reply to Gov't's Opp'n to Mot. for a Bill of Particulars* (ECF No. 98) (*Def.'s Reply*).

**B.     The Allegations of the Indictment**

    **1.     The Defendants, Home Health Agencies, PSS Workers, and MaineCare Reimbursement**

The January 27, 2022, indictment alleges that beginning in April 2020 and ending in May 2020, the Defendants engaged in a conspiracy to "suppress and eliminate competition for the services of PSS workers by agreeing to fix the rates paid to PSS workers and by agreeing not to hire each other's PSS workers." *Indictment* ¶ 15. The indictment alleges that during this period, each Defendant was either a manager, owner, or co-owner of a home health care agency in the Portland, Maine area that employed PSS workers to provide personal care services to individuals, known as clients, in the clients' homes. *Id.* ¶¶ 1-2, 5-8. The indictment alleges that

---

¹     As the other Defendants joined Mr. Alkinani's motion but did not offer additional argument, the Court refers to the motion as the Defendant's motion, even though Mr. Alkinani filed the substantive motion and the other three Defendants joined.

PSS workers typically receive a set hourly wage and are usually paid on a bi-weekly basis. *Id.* ¶ 2. The home health care agencies that employ the PSS workers claim reimbursement for PSS services on behalf of their clients from the Office of MaineCare Services (MaineCare) within the Maine Department of Health and Human Services (DHHS). *Id.* MaineCare is a jointly funded federal and state Medicaid program that provides free or low-cost services to Mainers who meet certain requirements. *Id.* The indictment alleges that "[t]ypically, the difference between the hourly rates that a home health agency pays to PSS workers and the reimbursement rates it receives from MaineCare constitutes the company's margin." *Id.*

## 2. The March 30, 2020, Hourly Rate Increase and the Paycheck Protection Program (PPP)

The indictment alleges that on March 30, 2020, Maine DHHS announced actions in response to the 2019 novel coronavirus (COVID-19) pandemic to "support Maine personal care workers, [and] Maine seniors" and "to accelerate benefits for personal care workers and residents who are home-bound." *Id.* ¶ 3. Effective April 1, 2020, Maine DHHS increased the reimbursement rate paid to Maine home health care agencies from $20.52 per hour to $26.20 per hour to "allow them to fund pay raises for approximately 20,000 personal care workers." *Id.*

In addition, the indictment alleges that home health care agencies were eligible to apply for and receive loans from the Small Business Administration's (SBA) Paycheck Protection Program (PPP). *Id.* ¶ 4. The PPP was established by the

Coronavirus Aid, Relief, and Economic Security (CARES) Act during the COVID-19 pandemic. *Id.* The PPP loans were forgivable so long as the loan recipients expended a certain percentage of the loans directly for payroll within a designated time. *Id.* The indictment sets forth the managerial or ownership role that the Defendants, as well as other unnamed and unindicted individuals, had in their respective home health care agencies, and states that three companies received PPP loans. *Id.* ¶¶ 5-14.

### 3. The Specific Conspiracy Allegations

The indictment contains specific allegations against each Defendant and describes the period of time, the place, the object, and the modus operandi of the conspiracy. *See id.* The indictment again alleges that the conspiracy took place beginning at least as early as April 2020 and continuing until the end of May 2020. *Id.* ¶ 15. It alleges that the conspiracy took place in the District of Maine and elsewhere. *Id.* It describes the objective of the conspiracy:

> The co-conspirators "entered into . . . [a] conspiracy to suppress and eliminate competition for the services of PSS workers by agreeing to fix the rates paid to PSS workers and by agreeing not to hire each other's PSS workers."

*Id.* ¶ 15. The indictment further states that:

> The co-conspirators agreed to "refrain from raising the hourly rates of the PSS workers employed by their respective home health care agencies, and that they would allocate PSS workers by not hiring each other's PSS workers."

*Id.* ¶ 16. The indictment contains ten paragraphs in which it describes virtual and in-person meetings and communications in which the Defendants and others

4

allegedly agreed to take specific actions in furtherance of the conspiracy. *Id.* ¶ 17(a)-(j).

### 4. The PPP Conspiracy

Unlike the indictment's allegations concerning the PSS worker conspiracy, its allegations concerning the PPP part of the conspiracy are thin. Paragraph four sets forth the background of the PPP and its limited use for certain business expenses, including payroll. *Id.* ¶ 4. In paragraphs five through seven, the indictment says that Defendants Kalayaf, Aali, and Alkinani and their respective companies received substantial PPP loans. *Id.* ¶¶ 5-7. Notably, there is no such allegation against Quasim Saesah and his Company D. *Id.* ¶ 8. The only other PPP allegation is that the PPP funds flowed in interstate commerce. *Id.* ¶ 18(a). There is no express charge that the Defendants conspired to misuse the PPP, diverted PPP funds, or otherwise misbehaved with respect to these funds as opposed to the allegations about rate fixing and non-hiring agreements regarding the PSS workers.

## II. THE POSITIONS OF THE PARTIES

### A. Ammar Alkinani's Position

Quoting Federal Rule of Criminal Procedure 7(f) and citing First Circuit caselaw, Mr. Alkinani says that the purpose of a bill of particulars is to prevent a defendant from being disabled from preparing a defense, being caught by unfair surprise at trial, and seeking the shelter of the Double Jeopardy clause. *Def.'s Mot.* at 4 (quoting FED. R. CRIM. P. 7(f) and citing *United States v. Sepulveda*, 15 F.3d 1161 (1st Cir. 1993); *United States v. Poulin*, 588 F. Supp. 2d 64 (D. Me. 2008)). Mr.

Alkinani contends that in order to meet these requirements, the Government must be compelled to describe with particularity:

1) The combination and conspiracy referenced in ¶ 15 of the indictment;

2) When specifically the combination and conspiracy was made and consummated;

3) When each act in restraint of trade occurred and how each act substantially affected interstate commerce;

4) What specifically Mr. Alkinani is alleged to have done in furtherance of the conspiracy;

5) The date and time of each communication in furtherance of the conspiracy;

6) The names of the unidentified Individuals 1 though 4 and unidentified individual Companies A though F; and

7) The names of the unidentified co-conspirators.

*Id.* at 7.

### B. The Government's Opposition

The Government opposes Mr. Alkinani's motion for a bill of particulars. *Gov't's Opp'n* at 1-9. The Government notes the detailed nature of the indictment and represents that it supplied Mr. Alkinani with extensive discovery, consisting of "thousands of pages of records in a searchable electronic format." *Id.* at 1-2. The Government says that it produced one extensive round of discovery material and two supplemental rounds. *Id.* at 2. The Government states that it has made "all relevant materials in its possession available to the Defendants in discovery" and has produced "a substantial amount of Jenks material." *Id.* The Government recognizes its "continuing duty to disclose under Rule 16." *Id.*

6

After reviewing applicable caselaw, the Government asserts that the current indictment "provides Defendants with more than sufficient notice" and complies with First Circuit requirements by citing the applicable statute, describing the elements of the statute that the Defendants are alleged to have violated, naming the four Defendants, and describing the actions the Defendants are alleged to have taken in furtherance of the charged conspiracy. *Id.* at 5-6. The Government maintains that its compliance with discovery obligations obviates Mr. Alkinani's need for a bill of particulars to properly defend the charge. *Id.* at 6-7. In particular, the Government says that Mr. Alkinani's claim that he does not know the names of the unidentified individuals and businesses "strains credulity" since the Government has provided "all FD 302's in its possession, as well [as] hundreds of conspiratorial texts, and audio-recordings of conspiratorial meetings." *Id.* at 7. In sum, the Government argues that Mr. Alkinani's motion for a bill of particulars "is therefore an improper attempt to require the government to particularize its evidence and reveal its legal theory before trial." *Id.* at 8.

C.  **Ammar Alkinani's Reply**

In his reply, Mr. Alkinani disputes the Government's citation of caselaw that discusses "open-file" discovery. *Def.'s Reply* at 1-2. Contrary to the Government's implication, Mr. Alkinani is "constrained to note" that even though the Government has provided "voluminous" discovery, it has not engaged in "open-file" discovery. *Id.* Distinguishing the federal practice, Mr. Alkinani contrasts the practice of state of

7

Maine prosecutors who "actually open and share their complete files with the other side." *Id.* at 2 n.1.

Regarding the Government's statement that it has revealed the identities of the four unnamed individuals and six unnamed businesses, Mr. Alkinani points out that the indictment refers to five, not four, individuals and twelve, not six, businesses. *Id.* at 2. He argues that the Defendants should not be required to "guess as to who is an unindicted co-conspirator and who is simply a witness in preparing their defense." *Id.*

### III.   LEGAL PRINCIPLES

Rule 7(c) governs the nature and contents of an indictment. FED. R. CRIM. P. 7(c). It requires that the indictment be "a plain, concise, and definite written statement of the essential facts constituting the offense charged." *Id.* In general, an indictment is sufficiently particular if it "specifies the elements of the offense charged, fairly apprises the defendant of the charge against which he must defend, and allows him to contest it without fear of double jeopardy." *United States v. Savarese*, 686 F.3d 1, 6 (1st Cir. 2012) (citing *Sepulveda*, 15 F.3d at 1192); *see Hamling v. United States,* 418 U.S. 87, 117 (1974).

As the Supreme Court has observed, "an indictment parroting the language of a federal criminal statute is often sufficient." *United States v. Resendiz-Ponce*, 549 U.S. 102, 109 (2007); *accord United States v. Stepanets*, 879 F.3d 367, 373 n.4 (1st Cir. 2018). In *Hamling,* the Supreme Court wrote that it is "generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those

8

words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" *Hamling*, 418 U.S. at 117 (quoting *United States v. Carll,* 105 U.S. 611, 612 (1882)); *see Savarese*, 686 F.3d at 6 ("An indictment that tracks the language of the underlying statute is usually sufficient to meet this standard provided that the excerpted statutory language sets out all elements of the offense without material uncertainty") (punctuation and citation omitted). Thus, although the language of the statute may be used in a general description of the offense, "it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." *Hamling*, 418 U.S. 117-18 (quoting *United States v. Hess,* 124 U.S. 483, 487 (1888)).

Similarly, the purpose of a bill of particulars is "to provide the accused with detail of the charges against him where necessary to enable him to prepare his defense, to avoid surprise at trial, and to protect against double jeopardy." *United States v. Paiva*, 892 F.2d 148, 154 (1st Cir. 1989) (citations omitted). On appeal, a defendant must show he lacked a "fair opportunity to prepare a defense" without a bill of particulars. *United States v. Nelson-Rodriguez*, 319 F.3d 12, 31 (1st Cir. 2003). The First Circuit requires a showing of "actual prejudice" from the indictment's lack of specificity; namely, "specific evidence or witnesses that the lack of particularization prevented him from obtaining." *United States v. Arboleda,* 929 F.2d 858, 869 (1st Cir. 1991). An indictment that "provides a temporal framework" for the charge is sufficient, and "modified open-file" discovery from the government may obviate the

9

n
n
n

need for greater specificity. *Sepulveda*, 15 F.3d at 1192, 1193. Finally, although allowed under Federal Rule of Criminal Procedure 7(f), motions for bills of particulars are seldom employed in modern federal practice. *Id.* at 1192; *United States v. Abreu*, 952 F.2d 1458, 1469 (1st Cir. 1992).

### IV. DISCUSSION

Here, the indictment informs the Defendants of: (1) the date – at the latest – the Government claims they began the conspiracy; (2) the date – at the earliest – the Government claims they stopped the conspiracy; (3) the general place – within the District of Maine – where the Government claims they committed a portion of the conspiracy; (4) the more specific places – mostly in the area around Portland, Maine and one in Augusta, Maine – where the Government claims the home health care agencies operated; (5) the object of the conspiracy – to suppress or eliminate competition for the services of PSS workers by agreeing to fix the rates paid to PSS workers and by agreeing not to hire each other's PSS workers; (6) the general modus operandi – a conspiracy – of the crime; (7) more specific actions the Government alleges the Defendants took to participate in the alleged conspiracy; (8) the statutory provision – 15 U.S.C. § 1 – that the Government claims they violated; and (9) the per se nature of the alleged violation. These cumulative allegations are easily sufficient to inform the Defendants about the elements of the crime and the nature of the charge and provide sufficient information to avoid potential double jeopardy.

As regards the thin PPP allegations, the Court assumes that the general allegations about conspiracy – beginning and ending dates, geographic region, named

10

and unnamed coconspirators, the PPP requirements, three of the named Defendants' receipt of PPP funding – apply with equal force to the PPP part of the indictment. The sparseness of allegations in the indictment of actions the Defendants took in furtherance of the PPP part of the conspiracy gives the Court some pause, especially against Quasim Saesah and Company D, since neither is alleged to have been a recipient of a PPP loan. Nevertheless, for the Defendants who did receive PPP loans, the indictment states that they were required to use those loans for expenses such as payroll and the PPP funds were only forgivable if the Defendants applied a certain percentage toward their PSS workers' wages. As the indictment alleges a conspiracy to fix wages and it would be a potential violation of the Sherman Act to conspire not to spend the PPP loans as directed, the Court concludes that, taken as a whole and given the Government's discovery obligations, the indictment is sufficient to withstand the demand for more particularity.

In drawing this conclusion, the Court considered the Government's representation that it has supplied the Defendants with "all relevant materials in its possession available to the Defendants in discovery" and it "has produced a substantial amount of Jencks Act materials." *Gov't's Opp'n* at 2. Although Mr. Alkinani criticizes the Government's failure to provide "open file discovery" in accordance with the practice of prosecutors in the state of Maine, a federal prosecutor's disclosure obligations are statutorily circumscribed by the Jencks Act. 18 U.S.C. § 3500. The United States Supreme Court has upheld the constitutionality of the Jencks Act. *Scales v. United States*, 367 U.S. 203, 257-58 (1961) ("[T]he

11

procedure set forth in the statute does not violate the Constitution"). Thus, in *Sepulveda,* discussing discovery in the context of a bill of particulars, the First Circuit was careful to refer to the benefits not of open-file discovery but of "modified open-file discovery, i.e. automatic discovery that encompassed all relevant data except Jencks Act material related to witnesses not employed in law enforcement." 15 F.3d at 1193. If the Government in this case has violated its discovery obligations (and there is no suggestion that it has), each Defendant has the right to file a motion under Federal Rule of Criminal Procedure 16, a more appropriate procedural vehicle than a Rule 7(f) motion for a bill of particulars.

Although the Government did not expressly mention its discovery obligations under *Brady/Giglio*, part of the Government's discovery obligation is to produce "evidence favorable to an accused . . . where the evidence is material either to guilt or to punishment . . .," *Brady v. Maryland*, 373 U.S. 83, 87 (1963), including "evidence affecting credibility." *Giglio v. United States,* 405 U.S. 150, 154 (1972). The Court assumes that, in its acknowledgement of its discovery obligations, the Government is aware of and is fulfilling its *Brady/Giglio* disclosure requirements.

Mr. Alkinani also critiques the indictment for its failure to name all the alleged co-conspirators. *Def.'s Mot.* at 2 ("Nor does the Indictment identify any of the many, listed co-conspirators"). The United States Supreme Court has squarely addressed this issue:

> Of course, at least two persons are required to constitute a conspiracy, but the identity of the other members of the conspiracy is not needed, inasmuch as one person can be convicted of conspiring with persons whose names are unknown.

12

*Rogers v. United States*, 340 U.S. 367, 375 (1951); *accord United States v. Nason*, 9 F.3d 155, 159 (1st Cir. 1993) (stating that "[a] defendant can be indicted and convicted even if the names of his co-conspirators are unknown, as long as the government presents evidence of an agreement between two or more persons"); *accord United States v. Penagaricano-Soler*, 911 F.2d 833, 859 n.5 (1st Cir. 1990) (describing the Supreme Court's statement in *Rogers v. United States* as "settled law").

In sum, because the Court concludes that the indictment "elucidates the elements of the crime, enlightens [the Defendants] as to the nature of the charge against which [they] must defend, and enables [them] to plead double jeopardy in bar of future prosecutions for the same offense," *Sepulveda*, 15 F.3d at 1192, the Court concludes that it must deny the motion for bill of particulars. *See United States v. Faucette*, No. 2:13-cr-79-DBH, 2013 U.S. Dist. LEXIS 95148, at *3 (D. Me. July 9, 2013) (A defendant "is not entitled by way of a bill of particulars to obtain details revealing the precise manner in which the government alleges that he committed the crimes charged or the manner in which it will attempt to prove the charges").

V. **CONCLUSION**

The Court DENIES Ammar Alkinani's Motion for a Bill of Particulars (ECF No. 65) and the joined motions of Faysal Kalayaf Manahe, Yaser Aali, and Quasim Saesah. *See* Defendant Faysal Kalayaf Manahe's Motion for Leave to File Joinder in Motions Filed by Co-Defendants (ECF No. 77); Defendant Quasim Saesah's Notice of Joining Motions Filed by Co-Defendants (ECF No. 81); Defendant Yaser Aali's Notice of Joining in Motions Filed by Co-Defendants (ECF No. 82).

13

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 2nd day of August, 2022